v. Allegiant Air, 24-13815. I have Mr. Prater here for the appellant. Mr. Doss, is that correct pronunciation? Very well. Mr. Doss here for the appellee. Now, Mr. Prater, no hurry, but whenever you're ready. May it please the Court. Good morning, Your Honors. Good morning. My name is Chris Prater. I represent the appellant, Kelley, Ebony Kelley. We're here today on an appeal. This is an appeal, like so many before it, regarding who decides disputed facts on summary judgment. That's really what this case comes down to, and what facts the district court actually has discretion to interpret. The grounds for reversal in this case are made clear when we look to this Court's recent decision of Ishmael v. Roundtree, which is a clear distillation of what has already been the case for years, that Rule 56 is the poll star. That's it. It comes down to Rule 56, and in that, we must look to the record as a whole. If facts are genuinely disputed, they must be left to the jury, and in Ishmael, the Court held that summary judgment should not be granted merely because a plaintiff failed to demonstrate pretext, unless the record also fails to put forth enough evidence for a jury to find discrimination or retaliation. Despite how many times this Court has reiterated this reality, district courts continue to apply an overly rigid and strict framework under McDonnell-Douglas that overemphasizes suggestions and guideposts under that progeny, and otherwise, in lieu of whether in the totality of the circumstances a reasonable jury could infer from the record . . . I don't think the district court here did as good of a job as we've asked it to do. I mean, it acknowledged that McDonnell-Douglas wasn't the only way. It specifically acknowledged the convincing mosaic framework, which is what we, from the bottom line, Rule 56 question, and it went through sort of the categories of these things, and it didn't, in my view, did not like narrow the categories. It just tried to sort of put all the evidence in one box or the other, which is a fair way to do it, and ultimately . . . Now, we can disagree with what the district court did, but methodologically, it seemed to me that the district court did what we want district courts to do. No? Respectfully, no, Your Honor. I think . . . Tell me where the district court went wrong in its order. Yes, Your Honor. The district court, in this case, while certainly, at least at a minimum, paying lip service to the convincing mosaic . . . Paying lip service? He went on for like 10 pages. Absolutely, Your Honor. He did. However . . . That's some lip. Agreed, Your Honor. However, the reality here is the conclusions that were made and the inferences that were drawn and the resolution of disputed facts, which this record is rife with, was something that happened at virtually every step of the analysis that the district court did. Even while he analyzed . . . the district court analyzed McDonnell-Douglas and then moved on from it after saying the plaintiff had not satisfied the prima facie case and otherwise, it still, in ways, adhered to that framework, and in particular, if you look at, for example, the comparator analysis, by saying that the Butch sisters were not apt comparators or strict comparators under McDonnell-Douglas and then effectively ignoring them going forward. However, Ishmael, Jenkins . . . It's hard to understand how they are similarly situated. I mean, because the question under the convincing mosaic framework is still, were similarly situated people treated differently? And the way to see if someone's similarly situated is to go through to see what the similarities are between those people and then the one difference between them, meaning how they were treated. And here, let's take one thing that we often look at with regard to similarly situated, and that is your employment history. The Butch sisters had a very different employment history than your client. Your client had, not once, but twice, been reprimanded or had things in her file. I know one was a level two. One was sort of a more oral reprimand regarding attendance issues that the Butch sisters, as best as I can tell from the record, did not have. True? Sure. That is true, Your Honor. However, the adverse action at issue here had nothing to do with attendance history. It was about the alleged dishonesty. Yes, I understand that. But when we look at whether someone's similarly situated, someone who'd only been at the company for a year, and in that year had significant attendance issues, such that they didn't show up to their job on time multiple times, such that they were on probation and couldn't get a supervisory role for six months, seems to be differently situated than somebody who is actually otherwise an exemplary employee. Respectfully, Your Honor, we disagree. In this case, the analysis and what Allegiant actually relied upon had nothing to do with that. They focused on what were the statements during this investigative process. And we can now see, it likely does meet the strict comparator analysis under McDonnell-Douglas, although again, not necessary, because even without satisfying that burden, a comparator who isn't strictly comparative is still relevant to the issue. Absolutely, but once the similarity sort of dissipates, the less relevant it becomes. And so at some point, it becomes not really relevant at all for purposes of analogy. And remember, that's only one bit and piece of evidence. But let's take another difference between the Buck sisters, since you brought that up. The company believed, whether the company was right or wrong is a different point, but the company believed that your client lied and did not believe that the Buck sisters lied. Well, Your Honor, our position is that the company's... I understand your position is that as a matter of fact, there is a dispute of fact. But in looking at the company's belief for similarly situated, you have one who the company believes lied not once but twice, and you have another person who the company does not believe lied at all, especially with regard to the relevant incident. The problem there is it inherently bakes in the company's incorrect determination. That is the ultimate question. So this is where I'm having trouble, because you want us to focus on the ultimate question. That's great. We'll get rid of McDonnell-Dudless. Let's get right to the heart of it. The heart of it is, did the company intentionally discriminate? Because intent is part of this. So the company's belief very much is a part of that analysis. Actually, Your Honor, at this stage of summary judgment, it's not, did the company do it? Is there a genuine issue of material fact? But could a jury infer that they did? No. Is there a genuine issue of material fact? That's the question. As to... Yes, absolutely. But ultimately, could a jury infer that they intentionally discriminated? And here... So if the company's belief is that one person lied and one person didn't, and treated the liar differently than treated the non-liar, then that seems to be not a similarly situated employee, but a differently situated. But when an employer manufactures an issue with an employee, such as she's a liar... Without a doubt. If you had evidence of manufacturing, without a doubt. But here, we not only have the, like a he said, she said, it's now she, she. But a she said, she said account. We have three independent witnesses who verified one side. And your client, who at least initially says it didn't happen, but then in an email to the CEO says something like, what happened, did happen. Well, your honor, the witnesses, first, their, their statements are inherently inconsistent, even amongst their own. The, Melissa Stone, for example... No, just because they don't like... Just because it's not sort of in hike verba, word for word for word. They all testify to fundamentally the same thing. But there are material differences, your honor, between the statements that these witnesses said were made. Did Ms. Kelly say, is it because you're white? Or another one said, is it because I'm black? Or is it... The race, the race adjacent. But when a story is that materially different from every single witness, including witnesses' own recount of the story, for example, Melissa Stone, who changed her story from a reference to white to a reference to black within two to three days, that any reasonable employer and a reasonable jury could conclude that somebody who just takes that person, that, that witness's word, is not doing their job. Not just a witness's word. It's everybody else who was identified as witnessing, including the people your client identified as witnessing the incident, other than your client. Actually, Ms. Kelly actually identified only one individual who was in the room during the... That person was interviewed, right? He absolutely was. And his story, again, varied from that of General Bush. His story was, not his story, his truth, was that, that your client did make a race-based statement. Respectfully, whether his statement is truth is an issue for the jury. No, it's not right now. The question is whether you have created a genuine issue of material fact. Counsel, let me be clear. When you file a lawsuit, you do not get a jury trial. When a motion for summary judgment is filed, you do not, you are not entitled to a jury trial. You must show a genuine issue of material fact. You can't just say someone's a liar, and that means a jury could think they're a liar. Okay? Understood, Your Honor. However... So the question is, what issue of material fact did you have as to the belief of the company, not whether it in fact happened, but that the company had a genuine belief that your client lied? That's the issue. Ms. Kelly's recitation of what happened never varied, I'm so sorry, Your Honors, never varied between her original call with Allegiance Human Resources, her written emails, her subsequent calls with Human Resources, and even her deposition a year later. So that's actually not true, because the email is clearly inconsistent with her original account. But even putting the email aside, the question is not her consistent account, but whether the company genuinely believed that she lied. And if the company genuinely believed that she lied, and there is no dispute, no genuine dispute as to that, then I don't see how you could possibly prevail at summary judgment. There is a genuine dispute there, however, because the email, as Ms. Kelly explained in a subsequent interview prior to her termination, was referencing other discriminatory acts that she had already complained about. I know she said that. It's completely ridiculous, but I know she said that. The question is whether a company could read that email and believe it was referring to the November 20th incident as opposed to something else. I know what she said. The question is, can you read that? And I have to tell you, as someone who I believe to be a reasonable person, I have read the email, and at least can understand that a reasonable human being reading that email would think that it referred to the November 20th incident, and not some other incident that no one ever heard of before. But she had described those other incidents just three or four days before, on December 15th, when she submitted a detailed explanation of other instances of discrimination that she was referring to. She was, admittedly, and the notes reflect... Counsel, I understand that her testimony is inconsistent. You want to take that to mean that there's a genuine issue. That is not the ultimate question. The question is whether the company genuinely believed the reason it gave for the firing. And the company, though, basing that decision on a single email instead of the record in its totality? Not a single email. It's every... It's the fact that she said, I didn't say this, and everyone else says she did say race, and then in the email, then she lied, because she was suspended for that. And then she compounded it by lying about the incident in the email. There's an additional fact, right, Counsel, and I just want to make sure I understand the record. Before the December 15th email, your client never reported any racism to any supervisor, any final decision maker, or HR, right? That's not correct, Your Honor. Tell me what I've missed. Yes, Your Honor. It's actually detailed more in the SOAR reply to plaintiffs in support of opposite, or in opposition. What before December 15th is there? Ms. Kelly reported not only touching of the hair, comments of the hair that were ongoing, including by and in front of supervisors, and discussed that with Peterson. Anything else? Yes, Your Honor. She had reported to Alicia Dixon the comment that was reported to her, which was included in her December 15th email, and never addressed by Allegiant in any subsequent interviews. But I want to be very clear, did she ever report racism? Yes. Racism. Tell me how those two things are that, in the context of, everyone agrees that until we got to the internal investigation about the lies, this was a hokey-jokey relationship between two people that fell out. Everybody agreed with that. That was both sides agreeing that we were friends, and I used to refer to your race, and I used to call you a racist. Then there's a falling out. Then there's the subject that is going to become the internal investigation. So what I'm really asking is, until those moments in late November, there is no evidence that this company was ever aware, from her, of racism, right? Your Honor, I see my time is up. May I answer? Yes, of course. Thank you very much. Your Honor, no, that is respectfully not correct. The comment that was stated between Ms. Bush, her sister, and another associate about getting Ms. Kelly fired, referring to her as the N-word, and directly about her in the workplace, was reported to Ms. Kelly's supervisor prior to this November incident. That happened. It was never reported up. So she had complained, and as Ms. Kelly articulated, she was trying, as someone who had dealt with racism throughout her life, she just wanted to just work and put it there. But the fact remains, she did report these things, and supervisors even observed it happening. Okay. Very well. You've got some rebuttal time remaining. Mr. Das, let's hear from you. Good morning, Your Honors. May it please the Court. My name is Perlai K. Das, an attorney with the law firm of Fort Harrison, here today on behalf of the defendant of Kelly, a Legionnaire. Your Honors, let me start with the supplemental briefing order that this Court issued on Monday, which asked us to address the question from Ishmael about whether we should adopt the convincing mosaic standard. First, I want to be clear, the Court applied both the convincing mosaic standard and McDonnell Douglas test here. It's on page 25 of the opinion. But I think what the convincing mosaic standard does, it simply asks, has the plaintiff presented sufficient evidence so that a reasonable jury could determine that the employer engaged in intentional discrimination based on a protected characteristic, in this case, race? That's a simple question. Judge Newsom's concurring opinion at times makes that clear. It's footnote 8. That's the question that has to be asked. That's what the Court concluded the plaintiff could not do here. And so that's why, as a matter of law, summary judgment enters. And that's consistent with McDonnell Douglas, it's consistent with Rule 56, and it's consistent with convincing mosaic test. How do we plug in? I mean, this is really what the heart of the dispute is about, and the heart of the questions and answers that I just had with your opposing counsel, which is, how do we plug in, or what weight do we give the denial of the employee that the thing happened that the employer is saying happened and was the reason for the termination? Yeah, Your Honor, I think Your Honor's colloquy with counsel made that clear, that it really doesn't fit. Because this is not... Well, I'm not sure that's true. I know that's what we discussed, but I'm not sure that's completely true. It is some evidence. In other words, if an employer, if the duty of the plaintiff is to show that the reason was not genuine, then the fact that it didn't happen is something that would go to that. And the fact that it didn't happen is certainly evidence from the plaintiff stating this didn't happen as the employer is saying. So let me put it a different way. Again, the question is whether or not there's sufficient evidence to prove that the employer engaged in a legal discrimination. Even if the employer's investigation is wrong, that doesn't create that, satisfy that standard. And I think what Your Honor's question shows is where there is a difference between McDonnell-Douglas tests and the convincing mosaic as it's been implied by some courts. And what's been happening, and the reason that Judge Newsom's concurrence in time says we want to start getting away from McDonnell-Douglas is because it was putting a burden on the plaintiff to disprove the rationale provided by the employer. But that's not what this case was decided on. That does happen in some cases. Convincing mosaic. Sure as that. That's not what happens here. There's no dispute that the plaintiff was terminated because she was dishonest during the investigation. None. It's in the district court's decision. It's in the plaintiff's brief. So once that becomes the legitimate, non-discriminatory reason for termination, the plaintiff can't meet their burden. Yeah, so that's why I asked, perhaps inartfully, my question. I think that gets you a lot of the way there. What you're saying is that if you start at time zero, and there's an internal investigation, and we might be wrong. We're not the best investigators. But the way we conclude, it's four against one. You lied. Once we do that, that's not illegal discrimination under the law. Now that assumes time zero, which is why I asked your adversary. I want to make sure, are we at time zero? Because it's different if at time negative one and time negative two, there's genuine issues of possible racism going on. Then the internal investigation is cast in a different light. So let me ask you, your brother, as they used to say in the old days, disabused me and says, there is such evidence at negative one and negative two. Do you agree? No, Your Honor. What I will say, if you look at the only complaint that had ever been issued, it was about a co-worker touching the plaintiff's hair. It's set forth on page four of our brief, and it was addressed. There is no evidence in this case produced by the plaintiff that she was terminated because of her race. That's the question. And that's what they can't satisfy. The confusion that's happening here is because of that second part of the McDonnell-Douglas test, where once we offer a legitimate, non-discriminatory reason, the burden then shifts to the plaintiff to show that that is just actually untrue. But that's not the issue here. No one disputes that she was terminated because of her dishonesty. So it doesn't fit that issue. So that's why I say, under convincing Mosaic, under Ishmael, under Times, this plaintiff simply can't satisfy. I think that's true. I don't know that you're opposing counsel. I mean, he could speak for himself when he comes up here. But I don't think he would admit that I was actually terminated because I was dishonest. I think what you're opposing counsel would say is, I was terminated because of my race. And they're using this dishonesty, this alleged dishonesty, as a ruse in order to do so. So that's actually not what they're arguing. Because they're saying, if you look at it, that there's- How about this, counsel? Assume with me they are making that argument. And I think the answer to that would be, but to your point, did the employer have a good faith basis to conclude that the plaintiff was dishonest? I don't know if it's good faith, because that's more of objective. This is really a subjective test. And I think the way to undermine it is to show that there are reasons or implausibilities for why they would have done so. I just, and that's what we call, like, weaknesses and plausibilities. And that's what the convincing Mosaic is trying to do, is to say, hey, there were other employees who had the same thing happen to them, and you treated them differently. Hey, there was all this other stuff going on. There were statements that you made. You know, the things that we look to in a convincing Mosaic to show that, in fact, the reason you gave is not really the reason why I was fired. It was actually another reason having to do with race. And so, let's start with the things your opposing counsel talked about. Buck, for example, if you take plaintiff's version of the facts as true, Buck, which is that I didn't make the statement, Buck says that you did make this statement. And yet, the employer didn't do anything to Buck. So, that's a question about, I think that's what they're arguing, isn't the plaintiff was improperly terminated because of a race. It's that the investigations that the company was performing were different based on. That is one argument they're making, but they do that as a way to another piece of the Mosaic to get them to the ultimate fact. But I'm not talking about the nature of the investigation. Let me be clear, I'll get there. The argument he made to us here and he makes in his brief is if you take my version of the facts as true, which you must, which is I didn't lie. In fact, I did not say anything about race on November 20th. When Buck is interviewed, she said that the plaintiff did talk about race. That is a lie. And yet, she was not fired for that lie and I was. That's the argument they're making. Why is that not sufficient evidence to show that similarly situated employees, that is customer service reps at the airport, the same airport, were treated differently based on similar conduct? And I think the answer is because they can't show that race was a motivating factor for the employer taking adverse action in this case. They get there by undermining the reason that you gave. I mean, that's one way to get there. I'm not saying it gets them all the way there, but that's one reason. But we only get to that point if you make out a, if you have sufficient evidence to get to the jury in the first place. On the basis of race. Council, one way to do that, we have said, and I think correctly, is that if I am black and a white employee who is similar situated to me is treated better or differently than I am treated, then that is an indication that, in fact, I was terminated or the adverse employment action happened because of race. So that is a way to get to a jury on racial discrimination. And when I come back to it, I guess the focus being different is, in this case, there's no dispute of fact that would get you to a jury about the reason that the company acted in terminating the employee. Because they aren't, I think it's clear if you look at the objective evidence, as you noted, that once you have this email that went ahead as inconsistent with the prior statements plus another group of witnesses, the employer in that case. I'm not saying you don't have good evidence on your side, but that's not the question for us. The question is, is there some evidence on their side from which a reasonable jury could make that conclusion? The second thing they talk about, you mentioned it, is the investigation. So, you know, Buck gave names. Almost all or almost all of those names were interviewed. But then when they do the counter-investigation from the plaintiff who says, hey, all this other stuff happened. They don't interview Buck's sister, as I can tell. They don't interview the third person. Whereas they did sort of, it seems to be a more thorough investigation when it came to the complaint of a white employee. Why is that not part of a factor in the racial discrimination mosaic? I think what it, I mean, I guess it could be if that's what was being, the way this was being alleged and pursued. I'm just looking at the evidence in the light most favorable. But I think the question is whether the evidence, there's sufficient evidence from which a reasonable jury could conclude that the adverse action was taken on the basis of a protected characteristic. And that's why I don't think the totality of evidence in this case would support going to the jury, which is by summary judgment, properly entered. And I think that would be the question, remove, you know, convincing mosaic, remove McDonnell Douglas. Under Rule 56, any kind of civil action like this, and just to your point, just because you file a lawsuit doesn't mean you have a right to go to a jury. You have to have a material dispute of fact that would need to be litigated. And the question about the reasonableness of the investigation is not a material dispute of fact. We're talking about whether there was a legal discrimination. What about the, you know, you guys call it the Me Too evidence, I don't love that term, but the evidence of racial discrimination that was either handled or not handled by the company in the year or two before or immediately after this incident? So I would present, Your Honor, if you look at page 12 of our brief, obviously that was all produced in discovery. It just simply, there's no basis to show that there's enough similarity between those employees. Does there have to be firm mosaic? In other words, I mean, if you can show that an incident of race was alleged to have happened and the company handled it a particular way, and here, an incident of race was alleged to have happened and the company handled it a different way, isn't that enough to show some difference in how the company treats the plaintiff versus others? I think, again, if you have, if you look in isolation, I don't think that's gonna be enough to be able to get to a jury. If none of this is in isolation, we're all sort of piecing these things together for what may or may not be enough. And I think it's a practical matter, it's just not accurate, because if you look at page 12 of our brief where we did summarize those other investigations and how other employees were treated, there simply isn't enough to be able to establish that this plaintiff was illegally discriminated against on the basis of a race. Your Honor, I think I only have four minutes left. Can I address the second supplemental question Your Honor has asked about O'Neill? So my understanding on O'Neill is that it's presenting an issue of waiver. I know when we presented our waiver issue on the apex depositions, we did so on a rule three notice issue. The court has identified two other bases by which this may not be reviewable. I think waiver absolutely applies because the decision was made by the magistrate judge and it wasn't objected to before the district court. So clearly, under O'Neill, that's a waiver. What I don't know the answer to is whether or not, as the concurrence points out on O'Neill, that's a jurisdictional defect or it's simply a waiver. Well, I think O'Neill decides that. I mean, I think the concurrence thinks that our law should have made it jurisdictional. I think O'Neill decides that and says, at least in the civil context, it is not jurisdictional, but it's a non-jurisdictional waiver. That matter is only in the sense that we can theoretically decide it and the sense that you can theoretically waive waiver whereas you can't waive jurisdiction. I think that's the only probably difference between those two things. Fair enough, but we would think, following O'Neill, we would agree that the issue about the apex deposition is unreviewable for this court. And you did argue waiver, just in a different way. We argue waiver differently. Also note, there's nothing that bars the court from applying waiver because it is an issue about reviewability. So from that standpoint, this court could decide on those grounds on its own. Unless there are any other questions from the court, we just ask that the judgment below be affirmed. Okay, very well. Thank you, Your Honor. Thank you so much. Mr. Prater, you've got three minutes remaining. Thank you, Your Honor. Back to differences and the disparate treatment that the record reflects here. I think it goes, and also the adverse actions that Ms. Kelly suffered. It's not just her termination. She was suspended pending an investigation because, as the record reflects, and allegiance HR wrote in the notes, because they were concerned about her reference to racism to another employee over a computer issue. Now, let's compare some of the other, what happened to the white employees who were accused of saying or being engaged in racist conduct. They were talked to about some of the issues, not all of them, allowed to continue working, not suspended, not terminated, no other adverse action beyond literally just being talked to in the course of an investigation. Meanwhile, as Plano articulated, even during the investigation, including in her December 15th email, people were plotting on, or at least she had heard that people were plotting on trying to get her fired. That, read in conjunction with the whole record here, supports the finding that a convincing mosaic could be established and that a genuine dispute of material fact precludes summary judgment because, and undercuts the veracity and weight that a jury could give to the witness statements that were collected subsequent to that plot being identified. That happened, the comments between Ms. Butch and her sister were well before, and frankly, in line with what Ms. Kelly says happened here in that Ms. Butch and her friends manufactured what happened on November 20th to get her fired, and there was record evidence that supported that, and Allegiant didn't give it the time of day, instead they admonished her to be honest, there's none of those admonishments to Ms. Butch or the other witnesses, despite them having directly conflicting and inconsistent statements before even the email to Mr. Gallagher is sent by Ms. Kelly. They just took them at their word. This is disparate treatment, it was discrimination that resulted in adverse consequences to Ms. Kelly through not only the suspension, but her ultimate termination in this case. Briefly on the Me Too evidence that Your Honor referenced with counsel just a second ago, we agree that it does not need to be one-to-one relation to Ms. Kelly or directly apply to her. The circumstances that were going on, and the racial tensions, and as some described, a racial war that was imminent at Allegiant during this time is relevant to the convincing mosaic and the summary judgment analysis, and a jury could consider that relevant to whether Ms. Kelly was discriminated against. Based on the entire record here, we think that Ms. Kelly has satisfied her burden under Rule 56 and could prevail at trial ultimately to show that a reasonable jury could infer discrimination and retaliation from what occurred here. We request that the court reverse. Okay, very well. Thank you both. That case is submitted and the court is adjourned for the week.